UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| 3D LASERS LAB LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:19-cv-00098 |
| v. ) | |
| ) | |
| STEPHEN P. BENBOW, d/b/a ) | **PLAINTIFF DEMANDS** |
| SPINTECH, ) | **A TRIAL BY JURY** |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, DILUTION AND DECEPTIVE TRADE PRACTICES

COMES NOW plaintiff, 3D Lasers Lab LLC, an Illinois limited liability company (hereinafter, "Plaintiff"), by and through its attorneys, brings this Complaint against defendant Stephen P. Benbow, doing business as SpinTech (hereinafter, "Defendant") for Defendant's infringement and dilution of Plaintiff's trademark rights, unfair competition and deceptive trade practices. For its complaint against Defendant, Plaintiff alleges as follows:

### NATURE OF THE ACTION

1. This is an action for unfair competition and trademark infringement pursuant to the Lanham Act, 15 U.S.C. § 1125(a), dilution pursuant to the Illinois Trademark Registration and Protection Act, 765 ILCS § 1035/65, deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, *et seq.*, and Illinois common law.

2. Despite knowledge of Plaintiff's extensive use of and substantial common law rights in its trademarks, Defendant has used confusingly similar or identical names and online listings to sell products similar to Plaintiff's in violation of Plaintiff's intellectual property rights.

3. Given the extraordinary, continuous and intentional nature of Defendant's actions, Plaintiff seeks that this Court award Plaintiff its reasonable attorney fees.

4. Furthermore, because of the immediate and irreparable harm caused by Defendant's improper use of Plaintiff's marks, Plaintiff seeks preliminary and permanent injunctive relief and damages for Defendant's illegal and unauthorized acts.

5. The action results from Defendant's infringement of Plaintiff's mark, "3D Lasers" and its derivatives, as well as Plaintiff's mark "3D Lasers Lab" and its derivatives (hereinafter collectively referred to as the "marks").

6. The infringement results from Defendant's unauthorized use of the marks "3D Lasers" and "3D Lasers Lab" online, in related advertisements, with products not manufactured by Plaintiff, and Defendant's use of Amazon listings directly affiliated with the marks.

## THE PARTIES

7. Plaintiff originally was a sole proprietorship owned by Michael G. Schalk, who then transferred his rights, including any rights that he may have in this action, to an Illinois limited liability company that he formed named 3D Lasers Lab LLC. Plaintiff's principal place of business is located within this district at 1014 Ruskin Avenue, Edwardsville, Illinois 62025.

8. Plaintiff is in the business of designing, manufacturing, and selling Oculus Rift Sensor mounts (hereinafter, the "mounts").

9. These mounts are primarily sold through Amazon.com through the names "3D Lasers Lab" and "3D Lasers".

10. Upon Plaintiff's information and belief, Defendant is a sole proprietorship located in North Carolina and is owned by Stephen P. Benbow, doing business as SpinTech.

11. Upon Plaintiff's information and belief, Defendant is doing business in this district and has promoted goods by allowing customers to purchase counterfeit, inferior quality mounts with marks identical to Plaintiff's marks.

## JURISDICTION AND VENUE

12. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332(a)(1) and 1338(a) through (b). This Court has jurisdiction over Plaintiff's related common law claim under 28 U.S.C. § 1367.

13. Venue and personal jurisdiction are proper in the Southern District of Illinois under 28 U.S.C. § 1391(b) through (c) and 15 U.S.C. § 1121, since, inter alia, a substantial part of the events or omissions giving rise to the claims occurred here in this district, Defendant is doing business in this district, and Defendant has promoted goods in this district allowing customers to purchase counterfeit mounts with marks identical to Plaintiff's marks. Further, upon information and belief, Defendant is a foreign sole proprietorship, and sells his merchandise via one or more internet websites with a substantial effect on commerce in this district.

## GENERAL ALLEGATIONS

14. Plaintiff's Valuable Intellectual Property:

    a. Since long before the acts of Defendant described herein, Plaintiff has, since at least as early as February 8, 2017, continuously used the mark "3D Lasers Lab" in connection with the marketing and sale of its mounts to customers in Illinois and throughout the United States. This mark is Plaintiff's registered business name in Illinois.

    b. Since long before the acts of Defendant described herein, Plaintiff has, since at least as early as February 8, 2017, continuously used the mark "3D Lasers" in connection with the marketing and sale of its mounts to customers in Illinois and throughout the United States. This mark forms a part of Plaintiff's registered business name in Illinois.

    c. On Plaintiff's Amazon.com seller page, Plaintiff makes the following representations about its high-quality products:

    i. "Available in 2, 3, & 4-Packs!"

    ii. "ENHANCE YOUR VR EXPERIENCE | Give yourself more play-space by replacing the Oculus Rift Sensor stands."

    iii. "DAMAGE-FREE | Each display mount comes with 3M Command Strips to avoid damaging your walls and for an easy, quick set-up. Works on smooth, painted, or textured walls. Perfect for apartments and dormitories!"

    iv. "STAY CALIBRATED | Avoid having to re-calibrate your sensors. Once on the wall they stay calibrated until removal."

    v. "MADE IN USA | Manufactured by 3D Lasers Lab. Hole reamed for a perfect fit. 3D printed at 0.2 mm resolution."

  d. From its inception, Plaintiff's mounts have been widely accepted by the consuming public, with Plaintiff having a six-figure sales revenue for the calendar year 2018 despite Defendant's actions causing Plaintiff's revenue to decline.

  e. Plaintiff widely advertises its mounts under the names "3D Lasers Lab" and "3D Lasers" on the internet, primarily on Amazon.com.

  f. Plaintiff encloses a paper card with the logo for "3D Lasers" in all products that it manufactures and has advertised and/or marketed its mounts with this logo. A copy of that logo is attached hereto as Exhibit 1.

  g. As a result of Plaintiff's great marketing efforts, Plaintiff has enjoyed many positive online reviews from the consuming public on Amazon.com.

  h. Plaintiff has become well-known among the relevant consuming public as the single source of mounts marketed under the 3D Lasers Lab and 3D Lasers brand names.

    15.    <u>Defendant's Unauthorized Use of Plaintiff's Intellectual Property</u>:

    a.    Plaintiff has never authorized, licensed, or otherwise permitted Defendant to use Plaintiff's marks.

    b.    Starting on March 22, 2018, Defendant purchased Plaintiff's mounts to begin designing and selling his own.

    c.    Upon information and belief, Defendant then purchased additional mounts from Plaintiff for replication purposes on June 25, 2018 and August 16, 2018.

    d.    Defendant purchased these mounts so that he could copy Plaintiff's product, right down to the logo, and then sell these products for his own benefit.

    e.    Defendant produced imitation mounts that were of inferior quality, to-wit:

        i.    Defendant's imitation mounts are 3D printed in PLA instead of the superior ABS printing standard used by Plaintiff;

        ii.    Defendant's imitation mounts are printed with a wavy surface that causes them to not correctly mount to the wall versus Plaintiff's mounts, which do correctly mount to the wall; and

        iii.    Defendant's imitation mounts have a hole that is the wrong size to function properly when mounted to the wall versus Plaintiff's mounts, which have a correct hole size.

These imitation mounts are hereinafter referred to as the "bad mounts".

    f.    Upon information and belief, Defendant began selling these bad mounts on Amazon.com as early as April of 2018.

    g.    However, Defendant completed, listed and sold his bad mounts on Amazon at least as early as May 22, 2018 per the social media post attached hereto as Exhibit 2.

h. When Defendant sold his bad mounts on Amazon.com, he represented to Amazon that these products were Plaintiff's mounts, manufactured by Plaintiff, instead of admitting that Defendant was selling his own bad mounts.

i. Defendant then used a functionality within Amazon to ensure that his bad mounts would be the first option for sale for any customer who would click on products by "3d Lasers Lab". Upon information and belief, that functionality is a repricing functionality.

j. To demonstrate this, Plaintiff has gone to Amazon.com and collected two screenshots on January 30, 2019 that are attached hereto as Exhibit 3 and Exhibit 4.

k. As shown on Exhibit 3, when a consumer goes to Amazon.com and searches for "Oculus Rift Sensor Wall Mounts", products "by 3d Lasers Lab" are listed. As Exhibit 4 then shows, if a mount shown as "by 3d Lasers Lab" is clicked, the product page appears showing Plaintiff's mounts. However, on the right-hand side of Exhibit 4, right above the "Add to Cart" button, it states, "Sold by SpinTech and Fulfilled by Amazon."

l. This result was achieved by Defendant's misrepresentations to Amazon that it is selling genuine mounts by Plaintiff and using the aforementioned functionality within Amazon. This would be akin to selling shoes that a person claimed to be a Nike shoe on Amazon even though that person actually made the "Nike" shoe in their parent's basement.

m. Unfortunately, the result is that when a customer tries to purchase Plaintiff's mounts, that consumer often will receive a bad mount from Defendant instead of one of Plaintiff's mounts.

n. The aforementioned actions are done intentionally by Defendant so that he can pass off his bad mounts as Plaintiff's mounts.

      o.      To pretend that he is selling Plaintiff's mounts, Defendant even replicated the paper cards featuring the logo for 3D Lasers that come with each of Plaintiff's mounts.

      p.      The only differences in packaging were differences in font choice and paper thickness. See Exhibit 5. Defendant's packages also often contain hairs, dust or debris.

      q.      As a result, Defendant stole profits that rightfully belonged to Plaintiff by duping consumers into believing that they were buying Plaintiff's mounts when they were actually buying Defendant's bad mounts.

      r.      Furthermore, Plaintiff began receiving negative online reviews because consumers believed that the bad mounts in their dirty packaging were manufactured and distributed by Plaintiff even though they had been manufactured and distributed by Defendant.

      s.      Plaintiff has requested in writing no less than four times since May 2018 that Defendant cease passing off his bad mounts as Plaintiff's mounts. Despite those demands, Defendant is continuing his illegal actions as of the filing of this Complaint.

      t.      Plaintiff even personally called Defendant to ask him to stop his illegal actions. When Plaintiff stated its name, Defendant immediately hung up the phone on Plaintiff.

      u.      These actions of Defendant are intentional as shown in four social media posts by Defendant, attached hereto as Exhibits 6 through 9.

      v.      In Exhibit 6, Defendant states, "This is honestly getting kind of ridiculous" and shows off a picture of at least one hundred of his counterfeit bad mounts, complete with the reprint of Plaintiff's logo for 3D Lasers.

      w.      In Exhibit 7, Defendant admits, again on social media, that these products are not Plaintiff's products. Instead, Defendant admits: "they're camera mounting brackets for vr cameras. I 3D print and then sell them".

    x. In Exhibit 8, Defendant says of his actions: "It's legal to print. It's copyright infringement (or something, some kind of legal infringement….) but practically speaking nobody is going to go after [me] unless they find out and stood to make a lot of money off [of me] which is highly unlikely."

    y. Finally, in Exhibit 9, Defendant admits on social media that he is worried that someone will do to him what he is doing to Plaintiff:

> "I am worried about this with selling on amazon. As I start to add more products I'm worried that if 1 smart person with 3d printers finds my amazon profile pretty soon someone with the same idea will make a new product that's mine but 2 dollars cheaper…."

    z. Unfortunately, despite Plaintiff making multiple efforts, Amazon itself will not correct Defendant's deception, forcing Plaintiff to resort to this Court.

  16. Defendant's unauthorized use of Plaintiff's marks has and is likely to continue to mislead, deceive, and confuse consumers, who are likely to assume that the bad mounts bearing Plaintiff's marks are mounts that were manufactured by Plaintiff.

  17. Furthermore, Defendant's dirty packaging further harms Plaintiff's reputation.

  18. Due to the aforesaid acts by the Defendant, Plaintiff has and will continue to suffer substantial damages and injury. Plaintiff has no adequate remedy at law, and unless Defendant is restrained and enjoined by the Court, the acts will be continued and will continue to cause damage to Plaintiff's goodwill and business reputation.

  19. Due to the actual and potential loss of customers and sales, and the reality and further possibility of Defendant providing an inferior product using Plaintiff's marks, Plaintiff cannot ascertain the precise amount of damages at this time, but those damages exceed $75,000.

**Count I**
Federal Unfair Competition
Violation of Section 43(a) of the Lanham Act

COMES NOW Plaintiff, and for Count I of its Complaint against Defendant, states to the Court as follows:

20. Plaintiff incorporates by reference as though fully set forth herein paragraphs 1 through and including 19 of its Complaint as and for paragraph 20 of Count I of its Complaint.

21. As its first ground for relief, Plaintiff hereby alleges federal unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

22. Defendant has unlawfully used Plaintiff's marks in advertising and commerce so that Defendant could confuse the consuming public into believing that Defendant's bad mounts were manufactured by Plaintiff.

23. These actions show Defendant's malicious intent to deliberately and willfully trade in on Plaintiff's long-standing and hard-earned goodwill in its name and marks and the reputation established by Plaintiff in connection with its products.

24. Defendant's adoption and use of the Plaintiff's names and marks, as alleged herein, constitutes use of a false designation of origin or a false representation, which falsely designates, describes and/or represents the Defendant's products and business as originating from or being in connection with Plaintiff, which is not the case, and thereby constitute a false description or representation used in interstate commerce.

25. Defendant's conduct has and is likely to continue to cause confusion, mistake or deception as to the affiliation, connection or association of Defendant with Plaintiff, especially those consumers seeking to buy from Plaintiff's names and marks who are wrongfully redirected to purchase from Defendant on Amazon.com.

26. Plaintiff has been and is being damaged by such violation and has no adequate remedy at law. Further, Defendant's unlawful conduct will continue to damage Plaintiff unless enjoined by this Court.

27. Based on Defendant's previous and continuing knowledge of Plaintiff's marks, as well as the Exhibits that are attached hereto, Defendant's federal unfair competition violation is willful.

WHEREFORE, Plaintiff requests the entry of judgment in its favor and against Defendant as is described in the prayer for relief as the end of this Complaint and to provide for such other and further relief as the Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON COUNT I
OF ITS COMPLAINT.

**Count II**
Federal Trademark Infringement Violation of
Section 43(a) of the Lanham Act

COMES NOW Plaintiff, and for Count II of its Complaint against Defendant, states to the Court as follows:

28. As its next ground for relief, Plaintiff incorporates by reference as though fully set forth herein paragraphs 1 through and including 27 of its Complaint as and for paragraph 28 of Count II of its Complaint.

29. Defendant's unauthorized use of Plaintiff's marks, such as causing the public to buy bad mounts from Defendant off of Plaintiff's Amazon listing, is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or association with Plaintiff's marks.

30. Consumers do and are likely to believe that Defendant's bad mounts are licensed by, sponsored by, and/or associated with the Plaintiff.

31. Defendant's unauthorized use of the marks falsely represents Defendant as being connected with Plaintiff and places Plaintiff's reputation beyond its control.

32. Plaintiff has no adequate remedy at law and Defendant's unlawful conduct will continue to damage Plaintiff unless enjoined by this Court.

33. Based on Defendant's previous and continuing knowledge of Plaintiff's marks, as well as the Exhibits that are attached hereto, Defendant's trademark infringement is willful.

WHEREFORE, Plaintiff requests the entry of judgment in its favor and against Defendant as is described in the prayer for relief as the end of this Complaint and to provide for such other and further relief as the Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON COUNT II
OF ITS COMPLAINT.

### Count III
Violation of the Illinois Uniform Deceptive Trade
Practices Act

COMES NOW Plaintiff, and for Count III of its Complaint against Defendant, states to the Court as follows:

34. Plaintiff incorporates by reference as though fully set forth herein paragraphs 1 through and including 33 of its Complaint as and for paragraph 34 of Count III of its Complaint.

35. For its next ground for relief, Plaintiff hereby alleges a deceptive trade practice violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, *et seq*.

36. 815 ILCS § 510/2(a) states: "A person engages in a deceptive trade practice when, … the person (1) passes off goods or services as those of another; (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) causes a likelihood of confusion or of misunderstanding as to affiliation,

connection, or association with or certification by another; … (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; … (6) or represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another[.]"

37. Further, in order to prevail, "… a plaintiff need not prove competition between the parties or actual confusion or misunderstanding." 815 ILCS § 510/2(b).

38. Defendant's unauthorized use of Plaintiff's marks, as pleaded herein, on Amazon, business cards and in connection with inferior goods similar to Plaintiff's causes a likelihood of confusion and deceives the public into believing the Defendant and Defendant's inferior goods are affiliated and/or connected with the Plaintiff in violation of 815 ILCS §§ 510/1-7.

39. Plaintiff has been and is being damaged by such violation and has no adequate remedy at law. Defendant's unlawful and willful conduct will continue to damage Plaintiff unless enjoined by this Court.

40. Based on Defendant's previous and continuing knowledge of Plaintiff's marks, as well as the Exhibits that are attached hereto, Defendant's violation of the Illinois Uniform Deceptive Trade Practices Act is willful.

WHEREFORE, Plaintiff requests the entry of judgment in its favor and against Defendant as is described in the prayer for relief as the end of this Complaint and to provide for such other and further relief as the Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON COUNT III
OF ITS COMPLAINT.

**Count IV**
Violation of the Illinois Trademark Registration
and Protection Act and Common Law

COMES NOW Plaintiff, and for Count IV of its Complaint against Defendant, states to the Court as follows:

41. Plaintiff incorporates by reference as though fully set forth herein paragraphs 1 through and including 40 of its Complaint as and for paragraph 41 of Count IV of its Complaint.

42. For its next ground for relief, Plaintiff alleges dilution in violation of the Illinois Trademark Registration and Protection Act, 765 ILCS § 1036, and the common law of Illinois.

43. By continuing the unauthorized use of Plaintiff's marks, or approximation or simulations thereof, Defendant is in violation of the Illinois Trademark Registration and Protection Act and the common law of Illinois because of the diminished public association with the Plaintiff's mark.

44. Plaintiff has been and is being damaged by such violation and has no adequate remedy at law. Defendant's unlawful and willful conduct will continue to damage Plaintiff unless enjoined by this Court.

45. Based on Defendant's previous and continuing knowledge of Plaintiff's marks, as well as the Exhibits that are attached hereto, Defendant's violation of the Illinois Trademark Registration and Protection Act is willful.

WHEREFORE, Plaintiff requests the entry of judgment in its favor and against Defendant as is described in the prayer for relief as the end of this Complaint and to provide for such other and further relief as the Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON COUNT IV
OF ITS COMPLAINT.

## Count V
### Violation of Common Law Unfair Competition

COMES NOW Plaintiff, and for Count V of its Complaint against Defendant, states to the Court as follows:

46. Plaintiff incorporates by reference as though fully set forth herein paragraphs 1 through and including 45 of its Complaint as and for paragraph 46 of Count V of its Complaint.

47. As its next ground for relief, Plaintiff hereby alleges common law unfair competition.

48. As a result of Defendant's actions as pleaded herein, Defendant has misappropriated valuable property rights belonging to Plaintiff, wrongfully diverted Plaintiff's consumers to Defendant on Amazon.com, and has and is likely to further confuse and deceive members of the purchasing public in violation of Illinois' common law of unfair competition.

49. Plaintiff has been and is being damaged by such violation and has no adequate remedy at law. Defendant's unlawful and willful conduct will continue to damage Plaintiff unless enjoined by this Court.

50. Based on Defendant's previous and continuing knowledge of Plaintiff's marks, as well as the Exhibits that are attached hereto, Defendant's violation of common law unfair competition is willful.

WHEREFORE, Plaintiff requests the entry of judgment in its favor and against Defendant as is described in the prayer for relief as the end of this Complaint and to provide for such other and further relief as the Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON COUNT V
OF ITS COMPLAINT.

**PRAYER FOR RELIEF**

51. Plaintiff incorporates by reference as though fully set forth herein paragraphs 1 through and including 50 of its Complaint as and for paragraph 51 of this Prayer for Relief.

52. That Defendant, his officers, agents, employees, licensees, attorneys, successors, related companies, parent companies, and assigns, and all those in active concern or participation with him, be forthwith preliminarily and thereafter permanently enjoined and restrained from:

    a. Using Plaintiff's marks or any other similar mark that is confusingly similar to Plaintiff's marks or gives rise to a likelihood of confusion, mistake or deception with respect to Plaintiff's marks;

    b. Doing any other act or thing likely to induce the mistaken belief that Defendant or his goods or business are in any way approved by or affiliated, connected, or associated with Plaintiff or Plaintiff's goods;

    c. Unfairly competing with Plaintiff in any manner whatsoever or causing injury to the business reputation of Plaintiff; and

    d. Cease advertising products manufactured by Defendant on Plaintiff's Amazon listing.

53. That Defendant delivers for destruction all advertisements, brochures, current inventory of products, and related materials that utilize the Plaintiff's marks or approximations or simulations thereof, and remove the same from any and all domain names and websites in Defendant's possession or control that bear the marks.

54. That an accounting is granted against Defendant, and Plaintiff be awarded monetary relief in an amount to be fixed by the Court in its discretion as just, including:

    a. All profits received by Defendant from sales and revenues of any kind made as a result of Defendant's unlawful actions;

    b. All damages sustained by Plaintiff as a result of Defendant's acts of infringement and unfair competition; and

    c. An order awarding Plaintiff compensatory, consequential and other damages, including pre- and post-judgment interest, suffered as a result of Defendant's violations of 15 U.S.C. § 1125(a), 815 ILCS § 510/1, *et seq.*, 765 ILCS § 1036 and Illinois common law pertaining to unfair competition.

55. That Defendant file with the Court and serve upon Plaintiff within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

56. That because of the exceptional nature of this case, resulting from Defendant's deliberate and willful infringement, this Court award Plaintiff its reasonable attorney fees, costs and disbursements.

57. That Plaintiff have such other and further relief as the Court may deem just.

## VERIFICATION

We, Michael G. Schalk and Cathleen Wood, declare under penalty of perjury that we are the sole Members of 3D Lasers Lab LLC, an Illinois limited liability company, and that the statements contained in the foregoing Complaint are true and correct, except as to matters therein stated to be on information and belief, and, as to such matters, the undersigned certify as aforesaid that they verily believe the same to be true.

3D LASER LAB, an Illinois limited liability company

By: _____  By: _____
Michael G. Schalk, Member          Cathleen Wood, Member

Dated: February 1, 2019	Respectfully submitted,

**DONNER APPLEWHITE, ATTORNEYS AT LAW**

By:	*/s/ Thomas R. Applewhite*
Thomas R. Applewhite, # 6310947
1108 Olive Street, Suite 200
St. Louis, Missouri 63101
Phone:	(314) 240-5351
Facsimile:	(888) 785-4461
Email:	tom.applewhite@da-lawfirm.com

***Attorneys for Plaintiff***